IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXIGEN, LTD., | No. C 04-1203 TEH |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| ALIANT TELECOM, INC., a Canadian corporation; ALIANT, INC., a Canadian corporation, | |
| Defendants. | |

I. BACKGROUND

Aliant Telecom, Inc. ("Telecom"), a Canadian corporation, initially filed a motion to dismiss in August 2004 on the ground that its contacts with California are insufficient to permit either general or specific jurisdiction.[1] After hearing oral argument on October 4, 2004, this Court issued a detailed ruling on October 28, 2004, tentatively granting the motion but giving the plaintiff, Exigen Ltd.,("Exigen"), a period of time to undertake jurisdictional discovery. Exigen thereafter conducted depositions as well as written discovery, and the parties filed supplemental briefs and evidence with the Court. This

---

[1] Telecom is a wholly-owned subsidiary of co-defendant Aliant, Inc. ("Aliant"). Aliant does not contest jurisdiction over it in this Court.

matter was then argued before the Court again on Monday, April 4, 2005.  Having carefully considered the parties' written and oral arguments, and the entire record herein, the Court's tentative ruling is affirmed, and Telecom's motion to dismiss is GRANTED for the reasons set forth below.

II. <u>LEGAL STANDARD</u>

As set forth in this Court's October 28, 2004 Order, the plaintiff bears the burden of making a prima facie showing that jurisdiction exists. *Rio Properties, Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  To meet this burden at the motion to dismiss stage, the plaintiff must demonstrate facts which, if true, would support jurisdiction over the defendant. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

A plaintiff may proceed by establishing either general jurisdiction (where a defendant's forum activities are "continuous and systematic," thus subjecting defendant to suit for any cause of action), or specific jurisdiction (where more limited forum activities subject a defendant to suit for causes of action arising out of those activities). *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984).  As Exigen concedes that Telecom is not subject to general jurisdiction, the only issue is whether Telecom is subject to specific jurisdiction.

The Ninth Circuit has established two inquiries to determine whether a court may assert specific jurisdiction over a defendant in a diversity action.  First, the forum state's long-arm statute must authorize jurisdiction.  Second, the exercise of jurisdiction must comport with federal due process requirements. *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980) (citations omitted).  California's long-arm statute allows the exercise of personal jurisdiction to the extent permitted by the United States Constitution. Cal. Code Civ. Proc. § 410.10.  Thus, this Court "need only determine whether jurisdiction in this case would meet the requirements of due process." *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1484-85 (9th Cir. 1993) (quoting *Brainerd v.*

*Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989)). Due process, in turn, requires that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

The Ninth Circuit applies a three-part test to determine whether a defendant has "minimum contacts" with the forum sufficient to establish specific jurisdiction:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
>
> (2) The claim must arise out of or relate to defendant's forum-related activities.
>
> (3) The exercise of jurisdiction must be reasonable.

*Core-Vent*, 11 F.3d at 1485. Upon a showing under the first prong that the defendant purposefully directed his activities at forum residents, there arises a "presumption of reasonableness" which defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable. *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir. 1986).

III. DISCUSSION

The basic background facts of this case are set forth in this Court's October 4, 2004 Order and will not be repeated here. Exigen contends that the additional evidence adduced during jurisdictional discovery supports a reversal of the Court's tentative ruling, and a finding that Telecom's individual contacts with California support specific jurisdiction. Alternatively, if Telecom's individual contacts are insufficient, Exigen argues that the new evidence adduced also demonstrates that Telecom is subject to this Court's

3

1  specific jurisdiction because Aliant's forum contacts are properly imputable to Telecom.
2  Each of these issues is addressed in turn.

### A. Specific Jurisdiction Based On Telecom's Contacts With California

Exigen argues that the new evidence shows that "Telecom's contacts with California are significantly more extensive than the prior record reflected." Pl.'s Supp. at 7. Accordingly, Exigen contends, there is now a sufficient basis upon which to find that Telecom "purposefully availed" itself of the privilege of conducting activities in the forum. A close review of the evidence, however, does not sustain this position.

The actual deposition testimony shows that Mr. Howe, the Director of Engineering, made only one or two visits with Exigen, and that other Telecom personnel made possibly two visits. Much of the remainder of the "contacts" and "communications" plaintiff relies on amount to a few phone calls between Canada and California, and a few related voice-mail messages which are barely relevant. *See e.g.* Parker Depo. at Q89. *See also Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) ( Ordinarily, use of mails and telephone does not qualify as "purposeful activity"). Plaintiff also presented new evidence that Telecom personnel visited California to meet with companies *other than* Exigen; it fails to demonstrate, however, that these contacts are legally relevant for purposes of this motion. In short, the Court is not persuaded that the current record regarding Telecom's visits and phone calls is sufficient to change the Court's initial analysis set forth in the October 28, 2004 Order.

Exigen also renews its argument that this Court has specific jurisdiction over Telecom because Telecom allegedly caused harm to Exigen in California by fraudulently inducing Exigen to enter agreements requiring investment of substantial sums of money, and then abandoning Exigen as a business partner, and "sabotaging" Exigen's efforts to obtain additional business in Canada. The only new evidence Exigen submits on this point is the supplemental declaration of Exigen's Chairman of the Board, Alec Miloslavsky, who states that Exigen lost a business opportunity with Bell Canada, but that if the deal with

4

1 Bell Canada had materialized, it would have been signed by an officer of Exigen rather than
2 an officer of Exigen (Canada). This statement is a slim reed upon which to rest the
3 argument that "Exigen [would] sustain the brunt of its injury at its headquarters in
4 California." Pl.'s Supp. at 10:5. Plaintiff further speculates that by losing the contract
5 with Bell Canada, who it characterizes as an "initial customer," Exigen lost additional
6 business opportunities that might have followed. *Id*. at 11. While the evidence does show
7 that some mention was made to Telecom about Exigen's general desire to expand its
8 business, this can hardly support an inference that Exigen suffered the brunt of the harm
9 (even assuming such harm exists) in California.[2]

10 In sum, the Court continues to find that the facts proffered by Exigen – originally
11 and after jurisdictional discovery – do not show that Telecom has "purposefully availed"
12 itself of this forum based on Telecom's own contacts with California. Accordingly, the
13 Court turns again to Exigen's alternative argument that personal jurisdiction over Telecom
14 is established by imputing to it the forum contacts of Aliant, its parent corporation.

15

16 B. The Imputation of Aliant's Contacts to Telecom

17 As noted in this Court's October 28, 2004 Order, as a general rule, jurisdiction
18 over a parent corporation does not automatically establish jurisdiction over a subsidiary.
19 *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). Under an exception to
20 this rule, one corporation's contacts may be imputed to another if an agency relationship
21 exists between them. *Harris Rutsky*, 328 F.3d at 1134. Plaintiff bears the burden of
22 proving that the contacts of a parent corporation should be imputed to the subsidiary.
23 *Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1083 n.6 (E.D. Pa.1992). To
24 satisfy the agency test, Exigen must show that "the subsidiary was 'either established for,

---

[2] Exigen also argues that Telecom was a "participant" in the Aliant/Exigen joint venture, such that Telecom is imbued with all acts taken in furtherance of that venture. Because this is merely new argument, and not based on any new discovery, the Court does not consider it. Moreover, this is simply a reworking of plaintiff's old argument that Aliant is a single enterprise, such that anything Aliant does should be imputed to Telecom. As discussed *infra*, the Court continues to reject this theory.

or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself.'" *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 n.9 (9th Cir. 1994) (quoting *Gallagher*, 781 F. Supp. at 1083).

The new evidence submitted by Telecom establishes that Aliant and Telecom share the same Chief Operating Officer and Chief Financial Officer. As discussed in the tentative order, however, overlap among corporate officers and/or staff does not suffice to establish agency. *Harris Rutsky*, 328 F.3d at 1135; *Kramer Motors Inc. v. British Leyland Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980). Plaintiff's contention that the overlap here means that Aliant directly exerts "day-to-day operational control of Telecom" overstates the evidence. Pl.'s Supp. at 6:5. As the court held in *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App.4th 523, 541 (2000), a parent's general executive control over a subsidiary is not enough to support a finding of an agency relationship.

Exigen also claims that discovery has shown that Telecom plays an integral role in Aliant's partnership with Exigen, *see* Pl.'s Supp. at 2, and therefore Telecom is in reality just a "branch" through which Aliant conducts the telecommunications portion of its business, and upon which Aliant must rely in order to function. The new evidence it submits, however, merely establishes the breadth of the Exigen/Aliant partnership, which functions in a broad array of telecommunications projects. Plaintiff identifies the existence of multiple contracts within the Exigen/Aliant relationship, arguing that all the Aliant subsidiaries were part of an interconnected web. Pl.'s Supp. at 2-3. Plaintiff suggests an inference should be drawn from this information that each of the subsidiaries is thus fully and equally responsible for the livelihood of the business as a whole. This inference is not supported by logic or the facts. In particular, Exigen fails to meet its burden of establishing that Telecom's *particular* business dealings were essential to the Aliant group's livelihood.

Plaintiff also argues that Telecom acted as an operating division of Aliant, rather than as an independent business funded by a passive holding company. It is true that Aliant presents itself to its stockholders as "deliver[ing] a wide variety of innovative and

6

traditional communications services," rather than as a holding company per se, and that Aliant sometimes refers to itself as a single entity (e.g. in a press release discussing "[t]he company's approximately 8,300 employees"). Plaintiff, however, fails to provide significant evidence to support its overstated claim that "Telecom is the functional equivalent of 'an incorporated department of its parent.'" Pl.'s Supp. at 5:25 *quoting* October 4, 2004 Order at 10.[3]

In sum, the new evidence garnered by Exigen still falls short of establishing facts sufficient to support a finding that Telecom is merely an "agent" of Aliant. Therefore, Exigen cannot rely on Aliant's contacts with California to establish specific jurisdiction over Telecom.

IV. CONCLUSION

Having carefully considered Exigen's additional evidence adduced during jurisdictional discovery, the Court is not persuaded that it significantly alters the Court's original analysis. Accordingly, and for all of the reasons set forth in the Court's October 28, 2004 Order, as well as above, IT IS HEREBY ORDERED that:

1. Defendant Telecom's motion to dismiss for lack of personal jurisdiction is granted, and Telecom is dismissed from this action.

2. The parties shall promptly notify Justice Glennie of the Queen's Bench of New Brunswick, Canada of this Court's ruling. Likewise, they shall promptly notify this Court of any rulings by Justice Glennie that may bear on this action.

---

[3] Plaintiff also argues that Telecom played for Aliant the role of "innovating partner" with Exigen. Pl.'s Supp. at 3. According to this argument, Aliant had to provide an initial customer for Exigen, and it had to provide a "LivingLab" for Exigen's product. Aliant chose to use Telecom for these tasks, which otherwise would have been performed by Aliant itself (or, presumably, another Aliant subsidiary). Because this is merely new argument, and not based on any new discovery, the Court does not consider it.

7

3. The parties shall appear for a case management conference on Monday, September 19, 2005 at 1:30 p.m. A Joint Case Management Conference Statement shall be filed 10 days in advance.

**IT IS SO ORDERED.**

Dated:        August 11, 2005

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE